**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

_____

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **Britney Harrell,** | ) ) ) ) ) | **Case No. _____** |
| **Plaintiff** | ) | **JURY TRIAL DEMANDED** |
| **v.** | ) ) | **FILED IN CAMERA AND** |
| **UNIFIED RESIDENTIAL MANAGEMENT, LLC and ORO CAPITAL ADVISORS, LLC** | ) ) ) | **UNDER SEAL** Pursuant to 31 U.S.C. § 3730(b)(2) |
| **Defendants.** | ) ) | |

_____

**FIRST-AMENDED COMPLAINT**
**PURSUANT TO THE FALSE CLAIMS ACT**
**31 U.S.C. §§ 3729, *ET SEQ.***

_____

**COMES NOW,** Plaintiff/Relator Britney Harrell, by and through the undersigned counsel, files this Complaint pursuant to the False Claims Act, 31 U.S.C. §§ 3729, *et seq.* (hereinafter "Complaint").

<u>**Cause of Action**</u>

1.      This is an action to recover treble damages and civil penalties under the False Claims Act ("FCA") and to recover money for common law fraud or equitable causes of action for unjust enrichment and payment by mistake based upon the defendants' receipt of federal CARES (Coronavirus Aid, Relief, and Economic Security) Act (2020) and Coronavirus Response and Consolidated Appropriations Act (2021) funds to which

1

they were not entitled.

2.     Additionally, this action asserts claims of wrongful termination and retaliation under FCA because when the Relator would not participate in the fraudulent activity and attempted to curtail the fraudulent activity, the Defendants terminated the Relator's employment.

## Jurisdiction and Venue

3.     Relator brings this action on behalf of herself and on behalf of the United States for violations of the FCA, 31 U.S.C. §§ 3729, *et seq.*

4.     This Court has subject-matter jurisdiction to entertain this action pursuant to 28 U.S.C. § 1331 (Federal Question) and §1345 (United States as Plaintiff) as well as 31 U.S.C. § 3732 (False Claim Jurisdiction).

5.     This Court has personal jurisdiction over the Defendants under 31 U.S.C. § 3732(a) because the Defendants transact business in this district or have committed the alleged acts in this district.

6.     Venue is proper in this district under 31 U.S.C. § 3732(a) and (b) and 28 U.S.C. § 1391 because the subject transactions took place in the Western District of Tennessee.

## Parties to the Action

7.     The Relator is a resident of the State of Tennessee and brings this action on behalf of the United States of America.  The Relator was employed initially as an Assistant Manager at The Vale Apartments which are owned by Defendant Oro Capital Advisors and managed by Defendant Unified Residential Management, LLC.  As the

Assistant Manager, the Relator was responsible for managing the books of The Vales and handling the day-to-day accounting for tenants' rent payments.   The Relator later became the Manager of The Vales and her duties were to oversee it operations, make sure the tenants' concerns/complaints were addressed, supervise maintenance employees and office staff, handle payroll for the employees, and supervise the eviction of residents.   It was through her duties addressing tenants' complaints, the Relator discovered the Defendants' false and fraudulent claims activity against the government.

8.     Oro Capital Advisor (herein Oro Capital) is a limited liability company organized under the laws of the State of California, and none of its members or sub-members are citizens of the State of Tennessee. Its physical address is 11766 Wilshire Boulevard, Suite 325, in Los Angeles, California.   Oro Capital is a real estate investment firm specializing in distressed and valued-added real estate investments and real estate development in the middle market sector throughout the United States.   Oro Capital owns five apartment complexes in Memphis and Cordova, Shelby County, Tennessee. The properties are: The Birches, 6939 Dusty Trail Lane, Memphis 38133; The District, 6420 Knight Arnold Road, Memphis 38115; The Local, 3251 Knight Trails Circle, Memphis 38115; The Nova, 6355 Briar Patch Lane, Memphis 38115; The Stella, 2165 E. River Trace Drive, Memphis 38134; and The Vale (the Relator), 8293 George Brett Drive, Cordova 38018.   Oro Capital helped to create Unified Residential Management, LLC to manage its properties.

9.   Unified Residential Management, LLC (herein Unified Residential) is a limited liability company organized under the laws of the State of Texas and State of Tennessee

and is a branch of Unified Residential Management, LLC, organized under the laws of the State of Delaware.   Unified Residential manages several apartment properties in several states including the State of Tennessee.   Unified Residential manages Oro Capital's five properties in Shelby County, Tennessee.   Its physical address in Tennessee is 5810 Shelby Oaks Drive in Memphis.

## The False Claims Act

10.     The FCA provides, in pertinent parts, that any person who:

> (a)(1)(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (a)(1)(B) knowingly makes, uses or causes to be made or used, a False record or statement material to a false or fraudulent claim;
>
> (a)(1)(C) conspires to commit a violation subparagraphs (A), (B) and (D); and
>
> (a)(1)(D) has possession, custody, or control of property or money used, or to be used, by the Government and, intending to be delivered, less than all of money or property.

is liable to the United States for three times the amount of damages which the United States sustains, plus a civil penalty per violation. 31 U.S.C. § 3729(a)(1).

11.     FCA penalties are regularly adjusted for inflation, pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements of 2015.   See 28 U.S.C. § 2461 note.   For violations occurring after November 2, 2015, the civil penalty amounts currently range from a minimum of $12,537 to a maximum of $25,076.   28 C.F.R. 85.5.

12.     For purposes of the FCA, the terms "knowing" and "knowingly" mean:

> (A)     that a person, with respect to information ---
>
> > (i)     has actual knowledge of the information;

       (ii)     acts in deliberate ignorance of the truth or falsity of the information; or

       (iii)    acts in reckless disregard of the truth or falsity of the information; and

     (B)     it requires no proof of specific intent to defraud.

13.     Under the FCA, the term "claim" includes requests to the United States for payment, whether made directly or indirectly to the United States.   31 U.S.C. § 3729(b)(2)(A).

14.     The FCA defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."   31 U.S.C. § 3729(b)(4).

### Introduction

15.     Congress established an Emergency Rental Assistance (ERA) program administered by the United States Department of Treasury to distribute critically needed emergency rent and utility assistance to millions of households at risk of losing their housing/shelter due to COVID-19 pandemic.   Congress provided more than $46 billion for emergency rental assistance through the Consolidated Appropriation Act.   Federal funds were provided directly to the states, U.S. territories, Indian tribes and local governments with more than 200,000 residents.

16.     The Department of Treasury deemed Memphis and Shelby County governments eligible to participate in the program.   Memphis received $19,592,445.70 and Shelby County received $8,609,267.40 to administer to their residents.   A substantial portion of the funds was allocated to provide financial assistance, including

back and forward rent, utility payments and other housing expenses for individuals. The ERA could provide up to 12 months owed in rent arrearage and up to three months of prepaid rent.

17.     The City of Memphis and Shelby County administered the program locally under the name, Memphis and Shelby County Emergency Rental Assistance Program (MSCERA) to support individuals and families impacted by the pandemic. To be eligible, tenants must be renting in Shelby County, meet the income requirements, have loss income due to the pandemic or have an unstable housing situation.   An unstable housing situation is mainly defined as being behind on rent payments or have received a notice of eviction.

18.     Renters and landlords were eligible to apply for assistance. To obtain rental assistance for its tenants under MSCERA program, landlords were required to submit an electronic application to the MSCERA program. In the application, the landlord submitted contact information for the landlord and the tenant, including a copy of the landlord's W-9, the tenant's photo identification, and a copy of the tenant's lease agreement.   To participate in the program, the landlord also agreed not to evict the tenant for a certain period of time, 45 days after the last ERA payment.   Additionally, any and all late fees must be removed from the tenants' accounts upon receiving the ERA payments.

19.     In completing the rental assistance application, the landlord is also required to certify that statements to the MISCERA program were true and complete to the best of his or her knowledge and that the landlord would abide by the conditions of the program. The application also has a "False Claims Statement Warning" to advise the applicants of

this very civil action.

20.    Once approved, the landlord is required to notify the tenant that assistance is being provided on their behalf.   The MSCERA program sends the money directly to the landlord or the landlord's representative to cover the rental obligations.   MSCERA program typically sends the money in the form of a bulk settlement check with the allocated amount for each tenant, and the landlord or the landlord's representative/attorney accepts payment on behalf of their tenants who also applied for rental assistance.   The total payment provided to the landlord on behalf of the tenant must be applied to the tenant's account.

21.    The MSCERA also sent a letter/email to the tenant informing the tenant of the number of months his or her rents are covered.   The tenant's letter included the specific amount and delineated the timeframe the tenant's rents were covered including the past and future rents.

### The False Claims Activity

22.    Unified Residential and Oro Capital, management company and landlord, hired an attorney representative to apply or to submit, on behalf of their tenants, emergency rental assistance applications to the MSCERA program.   Unified Residential, Oro Capital and their representative agreed that the representative would receive 10% of the MSCERA obtained on behalf of each tenant. The MSCERA program initially provided bulk settlement checks, which included MSCERA award for each tenant, to Unified Residential/Oro Capital and later directly to the representative. Unified Residential and Oro Capital conspired and knowingly withheld 10% of the tenants' MSCERA to pay the

7

representative's 10% fee.   The MSCERA participation agreement required Unified Residential/Oro Capital to apply the full amount of the tenants' MSCERA to their accounts.   In addition, Unified Residential and Oro Capital did not remove all late charges from the tenants' accounts as required by the MSCERA participation agreement. Unified Residential and Oro Capital conspired and knowingly submitted or caused to be submitted false claims with material misrepresentations, and as a result, they received federal funds.

### The Facts Supporting the False Claims

23.   S. Joshua Kahane, a Memphis attorney with the law firm Glankler Brown, negotiated, on behalf of Unified Residential and Oro Capital, with the MSCERA program to obtain rental assistance for numerous tenants living in Unified Residential/Oro Capital's five properties. Unified Residential/Oro Capital and Mr. Kahane had a financial arrangement that Mr. Kahane would receive 10% of the amount awarded to each tenant through the MSCERA program.

24.   On behalf of Unified Residential/Oro Capital, Mr. Kahane received the bulk settlement checks for MSCERA to cover the tenants' past due and future rents.

25.   Once Mr. Kahane received the bulk settlement checks from the MSCERA program on behalf of the tenants, Mr. Kahane then issued checks on his law firm account to Unified Residential.   The issue checks were reduced by Mr. Kahane's 10% fee. Unified Residential and Oro Capital were both aware of the reduction and knew they were required to restore the 10% to the tenants' accounts or balances but failed to do so.

26.     Several tenants living in Unified Residential/Oro Capital's five properties began to complain to property managers that the full amount of MSCERA was not applied to their accounts.   The Relator managed The Vales apartment complex and numerous tenants living in The Vales complained directly to the Relator about their accounts' shortage.

27.     In November 2021, the Relator contacted Shavaugh Sierras, an accountant, working in Oro Capital's accounting department in Los Angeles, California. The Relator informed Ms. Sierras that her tenants were complaining that they had not received the full amount of their MSCERA and that late fees also were not removed from their accounts pursuant to the MSCERA agreement.

28.     On November 2, 2021, Ms. Sierra sent an email to the Relator with attached documents which clearly demonstrated that Unified Residential/Oro Capital was transferring 10% of the tenants' MSCERA to bad debt recovery (r-bdrecr) instead of crediting the tenants' accounts.[1]   One of the documents showed the following:

| Tenant | Rent | 10% | net | Charges r-bdrecr /r-conone |
|--------|------|-----|-----|----------------------------|
| F.B.[2] | 5,999.56 | 599.96 | 5,399.60 | (599.96) |
| J.H. | 6,348.00 | 634.00 | 5,713.20 | (634.00) |
| E.M. | 2,703.96 | 270.40 | 2,433.56 | (270.40) |
| W.E. | 3,894.55 | 389.46 | 3,505.09 | (389.46) |
| J.J. | 2,334.96 | 233.50 | 2,101.46 | (233.50) |
| C.W. | 3,144.76 | 314.46 | 2,830.30 | (314.45) |
| Actual Settlement | 24,425.79 | 2,442.58 | 21,983.21 | (2442.58) **(2442.58)** |

---

1 Any and all reference to documents are actual documents in possession of the Relator.
2 All initials in this document represent the first and last names of actual tenants.

The r-bdrecr was a code that Unified residential/Oro Capital used to recover money left on the tenants' accounts and to debit tenants' accounts who received two MSCERA payments.

29.    In December 2021, Ms. Sierras sent an email to MSCERA stating,  "The landlord for Oro Capital Advisor has been receiving bulk settlement checks from the City of Memphis…What I need help with is the allocation of these funds (i.e., how much did each tenant receive individually and what months of rent/utilities does this money cover specifically)?"   Ms. Sierra further stated, "I am now made aware that all our tenants that received these funds were also sent letters from MSCERA tenant support see attached example of this email. The information in these letters are what I need for every tenant that received funds so I can make sure our tenant ledgers…are accurate and it crucial I get this information as soon as possible for potential eviction purposes."

30.    Ms. Sierra sent another email which included several attachments.

A.    The first attachment: a letter dated August 24, 2021 from Mr. Kahane to Brenda Crawford of Unified Residential in Houston, Texas, stating he had collected $253,731.82 through his negotiations with the City of Memphis.

B.    The second attachment: a copy of a check for $253,731.82 written to Unified Residential and drawn on the trust account of Mr. Kahane's law firm.

C.    The third attachment: Unified Residential's Deposit Report showing the deposit for $253,731.82.

B.    The fourth attachment: a copy of an email sent by MSCERA to tenant Amber Webber advising "your past due rent has been paid, and future rent is being paid to your landlord through November 31, 2021. The total amount your landlord has received on your behalf is $4459.22."

Ms. Sierra received Tenant Webber's email from the Relator who had received it from Tenant Webber.

31.     However, when Mr. Kahane learned about Ms. Sierra's request to the MSCERA program, he blocked Ms. Sierra's efforts.   Mr. Kahane further directed Oro Capital to forbid Ms. Sierra from directly contacting MSCERA, even though Ms. Sierra had the responsibility of applying the correct MSCERA to the tenants' accounts.   As a result of Mr. Kahane's intervention, Ms. Sierra never received the requested information from MSCERA officials.

32.     Ms. Sierra and the Relator surreptitiously began working together to credit 10% back to tenants' accounts living in the property that the Relator managed.   Based on her accounting duties, Ms. Sierra had the ability to correct "after the fact' tenants' accounts through Unified Management/Oro Capital's Resident Ledger computer software program.   The Resident Ledger tracked tenants' rent payments (credits), apartment charges (debits) and account balances.   The Resident Ledger allowed Unified Residential and Oro Capital staff to change or correct tenants' accounts.

33.     Through the Residential Ledger, Unified Residential/Oro Capital documented the tenant's MSCERA as "Federal Appropriations Act Negotiations." Next, they gave the tenant a 10% credit by inputting "r-rent Federal Appropriation Act Negotiations." However, the Resident Ledger also showed that they then removed the credit by inputting a 10% debit as "r-rent To correct charge code."   Sometime "after-the-fact" Ms. Sierra restored the 10% credit to the tenant's account by inputting **"r-conone To correct charge code"** as a 10% credit. (Emphasis added).

11

34.     See the following tenants' accounts below:

### Tenant J. L.'s Resident Ledger

| | | | |
|---|---|---|---|
| 09/24/2021 | r-rent | Federal Appropriations Act Negotiations | (640.99) |
| **09/24/2021** | **r-conone** | **To correct charge code** | **(640.99)** |
| 09/24/2021 | r-rent | To correct charge code | 640.99 |
| 09/24/2021 | chk#33104 | Federal Appropriations Act Negotiations | $5768.90 |

### Tenant T. L.'s Resident Ledger

| | | | |
|---|---|---|---|
| 09/24/2021 | r-rent | Federal Appropriations Act Negotiations | (497.59) |
| **09/24/2021** | **r-conone** | **To correct charge code** | **(497.59)** |
| 09/24/2021 | r-rent | To correct charge code | 497.59 |
| 09/24/2021 | chk#33104 | Federal Appropriations Act Negotiations | $4478.28 |

### Tenant L. T.'s Resident Ledger

| | | | |
|---|---|---|---|
| 09/24/2021 | r-rent | Federal Appropriations Act Negotiations | (319.89) |
| **09/24/2021** | **r-conone** | **To correct charge code** | **(319.89)** |
| 09/24/2021 | r-rent | To correct charge code | 319.89 |
| 09/24/2021 | chk#33104 | Federal Appropriations Act Negotiations | $2878.96 |

### Tenant L. T.'s Resident Ledger

| | | | |
|---|---|---|---|
| 08/27/2021 | r-rent | Federal Appropriations Act Negotiations | (418.39) |
| 08/27/2021 | r-rent | Federal Appropriations Act Negotiations | 418.39 |
| **08/27/2021** | **r-conone** | **Federal Appropriations Act Negotiations** | **(418.39)** |
| 08/27/2021 | chk#33088 | Federal Appropriations Act Negotiations | $3765.46 |

### Tenant T. C. Residential Ledger

| | | | |
|---|---|---|---|
| 08/27/2021 | r-rent | Federal Appropriations Act Negotiations | (591.15) |
| 08/27/2021 | r-rent | Federal Appropriations Act Negotiations | 591.15 |
| **08/27/2021** | **r-conone** | **Federal Appropriations Act Negotiations** | **(591.15)** |
| 08/27/2021 | chk#33088 | Federal Appropriations Act Negotiations | $5320.33 |

### Tenant T. C. Resident Ledger

| | | | |
|---|---|---|---|
| 09/24/2021 | r-rent | Federal Appropriations Act Negotiations | (501.65) |
| **09/24/2021** | **r-conone** | **To correct charge code** | **(501.65)** |
| 09/24/2021 | r-rent | To correct charge code | 501.65 |

09/24/2021   chk#33104   Federal Appropriations Act Negotiations         $4514.83

35.     As demonstrated above, Unified Residential/Oro Capital conspired and knowingly attempted to pass along Mr. Kahane's 10% charge to the above tenants. However, Ms. Sierra intervened to restore a 10% credit to the tenants' accounts. Through the Relator's assistance, Ms. Sierra was able to restore the credit to a few of the above tenants living in The Vale apartments managed by the Relator.  As previously noted, Oro Capital owned and Unified Residential managed four other properties in Shelby County.

36.     On December 21, 2021, Tenant Q. I. contacted the Relator and Unified Residential complaining that her MSCERA for $8555.00 sent on November 15, 2021 had not been added to her account.  Eventually, Unified Residential/Oro Capital added $7699.50 (represents a 10% reduction of $8555.00) to Tenant Q. I.'s account.  In an email to Tenant Q. I., a Unified Residential representative stated, "Our accounting department have made the correction reflecting the $547.00 shortage." Tenant Q.I. then "came in and [was] very upset and said her account [was] still missing $308.50…said if not fixed immediately, she will report this company for not applying the funds correctly." In an email to management, the Unified Residential representative said, "I told her I'm sure we can correct this, and that reporting would not be necessary and she said for me to let her know when it is fixed."   Tenant Q. I.'s Resident Ledger showed on "12/16/2021 7,699.50" and later showed "12/22/2021 r-conone extra 901 money per Josh [Kahane] (547.00)" and "12/22/2021 r-conone extra 901 money per Josh [Kahane] (308.50)."   After complaining, Tenant Q. I. received the full amount of her MSCERA.

13

37.     Ms. Sierra made the adjustments to Tenant Q. I.'s Resident Ledger.   In January 2022, the Relator learned Ms. Sierra was no longer working for Oro Capital.

38.     The Relator continuously received complaints from tenants asserting their full MSCERA was not applied to their accounts.   On February 25, 2022, Tenant J.R. showed the Relator a copy of her MSCERA letter/email and it revealed that on February 17, 2022, MSCERA program sent a bulk settlement check and J.R.'s award was $5,944.05.   The Relator later learned that J.R.'s Resident Ledger revealed the MSCERA was not applied to J.R.'s account until "03/22/2022 - chk#033500 Glankler Brown – Fed Approp 5,349.65."   Unified Residential/Oro Capital withheld $594.40/10% from J.R.'s MSCERA.   Additionally, the Ledger reveals Unified Residential/Oro Capital failed to remove all late fees from J.R.'s account.

39.     On March 16, 2022, the Relator received a copy of T.T.'s MSCERA letter/email and it revealed that on February 25, 2022, MSCERA program sent a bulk settlement check and T.T.'s award was $9,887.00.   The Relator later learned that T.T.'s Resident Ledger revealed the amount was not applied until "05/10/2022 chk# 033597 S. Joshua Kahane – Federal Appropriation Act Negotiation 8898.33."   Unified Residential/Oro Capital again withheld $988.79/10% from T.T.'s MSCERA.   T.T.'s Ledger also revealed Unified Residential/Oro Capital failed to remove all late fees from T.T.'s account.

40.     On April 5, 2022, the Relator received an email from the State of Tennessee Attorney General's Office, Division of Consumer Affairs, concerning a complaint filed by

14

Tenant P. K. against the apartment complex.   In the complaint, Tenant P. K. asserted

that "rent assistance not being applied to balance."   The Relator forwarded Tenant P.

K.'s complaint to Unified Residential's management.

41.     The Relator knew that since Ms. Sierra left Oro Capital, no one had made

any adjustments to the tenants' accounts.   When the Relator compared the tenants'

MSCERA to the tenants' Resident Ledgers, she readily discovered Unified

Residential/Oro Capital applied only 90% of the MSCERA to the tenants' accounts.

42.     The below tenants' Resident Ledgers had no adjustment credit codes:

| Tenant | Date | Description | Amount |
|---|---|---|---|
| L. J. | 1/25/22 | chk#033331: from Atty Glankler Brown | 3,775.50 |
| R. H. | 1/25/22 | chk#033331: from Atty Glankler Brown | 6,161.95 |
| J. R. | 3/22/22 | chk#033500: from Atty Glankler Brown | **5,349.65** |

**(J.R.'s MSCERA listed in paragraph 38)**

| Tenant | Date | Description | Amount |
|---|---|---|---|
| N. C. | 3/22/22 | chk#033441: from Atty Glankler Brown | 2,000.16 |
| R. M. | 3/22/22 | chk#033477: from Atty Glankler Brown | 7,298.34 |
| T. T. | 5/10/22 | chk#033597:   S. Joshua Kane – Fed App. | **8,898.38** |

**(T.T.'s MSCERA listed in paragraph 39)**

43.     Additionally, on May 6, 2022, the Relator sent an email to Unified

Residential listing the name of more than 20 tenants and requesting the 10% charge be

credited to her Tenants' accounts. The Relator also stated the late fees needed to be

removed from the tenants' accounts pursuant to the MSCERA agreement.

44.     Not long after making these requests, Unified Residential retaliated against

the Relator by wrongfully terminating her employment.

<u>**The Scope of the Loss**</u>

45.     Oro Capital owns and Unified Residential manages five apartment

complexes in Memphis and Cordova, Shelby County.     Unified Residential/Oro Capital received its first bulk check for $253,731.82 on August 24, 2021 and have received numerous bulk checks for Tenants' MSCERA.   Based on the Relator's knowledge and investigation, Unified Residential/Oro Capital received the following bulk checks: Chk# 33088, Chk# 33104, Chk# 33331, Chk# 33441, Chk# 33477, and Chk# 33597.   Evidence suggests that MSCERA sent other bulk checks on behalf of tenants to Unified Residential/Oro Capital.     Even though the Relator is unaware of the bulk checks' amounts, if the first bulk check for $253,731.82 is indicative of the others, the amounts will be substantial.

## STATEMENT OF CLAIMS

### COUNT I

**False Claims Act, 31 U.S.C. § 3729(a)(1)(A)**
**(Presenting or Causing False Claims to be Presented for Payment)**

46.     The Relator hereby realleges and incorporates paragraphs 1 through 45 of the Complaint as if fully set forth herein.

47.     The Defendants submitted and caused to be submitted false claims for MSCERA for the above tenants and other qualifying tenants living in their five apartment complexes.   In their applications, the Defendants falsely represented that all funding would be used to pay past due and future rents, and that late fees would be removed from the accounts of the above tenants and other qualifying tenants living in their five apartment complexes.

48.     Based on the Defendants' material misrepresentations, the MSCERA program provided funding to the Defendants on behalf of the above tenants and other

qualifying tenants living in their five apartment complexes.

49.     The Defendants knowingly and with reckless disregard failed to apply the full funding amount received to pay the past due and future rents and failed to remove late fees from the accounts of the above tenants and other qualifying tenants living in their five apartment complexes.

50.     The Defendants well knew at the time of application and submission of the tenants' individual claims that the claims were false because the Defendants had no intentions of applying the full amount of the federal funds to the tenants' past due rents and future rents. Additionally, the Defendants had no intention of removing all late fees from the tenants' accounts.

## COUNT II

### False Claims Act, 31 U.S.C. § 3729(a)(1)(B)
### (Makes, uses or causes to be made or used, a false record or material statement)

51.     The Relator hereby realleges and incorporates paragraphs 1 through 50 of the Complaint as if fully set forth herein.

52.     The Defendants knowingly submitted or caused to be submitted numerous MSCERA applications that contained material misrepresentations regarding handling of MSCERA obtained for their tenants.

53.     The Defendants falsely represented that they would apply all MSCERA to the tenants' accounts and remove all late fees from the tenants' accounts.

54.     By virtue of the false statements and misrepresentations, the United States was damaged because the full amount of the tenants' MSCERA was not applied to the tenants' accounts but used to pay the 10% fee of the Defendants' representative

17

and late fees were not removed from the tenants' accounts.

## COUNT III

### False Claims Act, 31 U.S.C. § 3729(a)(1)(C)
### (Conspired to commit a violations subparagraphs (A), (B) and (D))

55.     The Relator hereby realleges and incorporates paragraphs 1 through 54 of the Complaint as if fully set forth herein.

56.     The Defendants conspired with themselves and others to have false claims paid by the United States.

57.     In furtherance of the conspiracy, the Defendants submitted and caused their representative to submit applications for MSCERA on behalf of their tenants.

58.     It was further part of the conspiracy that the Defendants agreed to pay their representative 10% of the MSCERA obtained on behalf of their tenants.

59      It was further part of the conspiracy that instead of the Defendants paying their representative's 10% fee from their operating cost, the Defendants paid the representative's 10% fee from the tenants' MSCERA in violation of the Defendants' participation agreement.

60.     It was further part of the conspiracy that the Defendants made and caused to be made materially false representations to officials of the MSCERA program.

61.     As a result of the conspiracy, the Defendants came into possession and caused their representative to be in possession of government property to which they were not entitled.

## COUNT IV

### False Claims Act, 31 U.S.C. § 3729(a)(1)(D)

**(Possession of government money or property to be used by government and intending to be delivered, less than all of money or property)**

62.     The Relator hereby realleges and incorporates paragraphs 1 through 61 of the Complaint as if fully set forth herein.

63.     The Defendants, through their representative, submitted applications on behalf of their tenants to obtain MSCERA.

64.     MSCERA was provided to the Defendants and to the Defendants' representative to pay their tenants' past due and future rents.

65.     MSCERA program provided numerous bulk settlement checks to the Defendants and to the Defendants' representative in care or on behalf of their tenants.

66.     The MSCERA program required the full amount of the bulk settlement checks to be applied to the tenants' accounts.

67.     The Defendants and the Defendants' representative were well aware that the government monies or property in their possession was intended to be delivered or applied in full to the tenants' accounts.

68.     The Defendants and the Defendants' representative knowingly delivered less than all of the government money or property to the tenants' accounts.

## COUNT V

### Unjust Enrichment

69.     The Relator hereby realleges and incorporates paragraphs 1 through 68 of the Complaint as if fully set forth herein.

70.     The Defendants wrongfully received and retained the benefit of federal monies paid by the government on behalf of their tenants.

71.     The Defendants were unjustly enriched with federal monies, in an amount to be determined at trial, for which they should not in equity and good conscience be permitted to retain.

## COUNT VI

### Payment by Mistake

72.     The Relator hereby realleges and incorporates paragraphs 1 through 71 of the Complaint as if fully set forth herein.

73.     This is a claim for the recovery of monies paid by the United States to the Defendants as a result of mistaken understanding of fact.

74.     The United States paid monies to the Defendants on behalf of their tenants and with the understanding that all the monies would be applied to the tenants' accounts.

75.     The United States made the payment to the Defendants without knowledge of material facts, and under the mistaken belief that the Defendants would carry out their duties.

76.     The United States' mistaken belief was material to its decision to pay the Defendants and confer a benefit on the Defendants for such claims.

77.     The Defendants received and retained the monies paid.

78.     Accordingly, the Defendants are liable to pay the United States the amounts of the payments made in error by the United States.

**PRAYER FOR RELIEF**

WHEREFORE, Relator, Britney Harrell, prays for a judgment on behalf of the United States against the Defendants and prays for the following relief be awarded:

1.      Enjoin the Defendant from manipulating or changing the tenants' Resident Ledgers who received MSCERA upon disclosure of this action;

2.      Order the Defendants to pay not less than $12,537 to a maximum of $25,076 per claim pursuant 31 U.S.C. § 3729 and 28 C.F.R. 85.5;

3.      Order the Defendant to pay three times the amount of damages which the United States sustained pursuant 31 U.S.C. § 3729;

4.      Award Relator reimbursement for all cost of this action, including attorney fees and expenses; Compensatory damages in an amount to be determined by a jury;

5.      Order the Defendants to be disgorged of all sums or repay the value of all benefits by which they have been unjustly enriched by their wrongful actions and conduct;

6.      Order the Defendants to pay the Relator's damages in the amount sufficient to compensate her for her losses as a direct and proximate results of the Defendants' actions for their retaliation against the Relator for attempting to curtail their wrongful activities and front pay and the value of future lost benefits since reinstatement may not be feasible under the circumstances; and

7.      Grant such additional relief as the Court deems just and proper including payment to Relator as allowed under the law, including without limitation that allowed

21

pursuant 31 U.S.C. § 3730.

## Request for Trial by Jury

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Relator, on behalf of the United States, hereby requests a trial by jury.

Respectfully submitted,

THE LAST CHANCE LAW FIRM, PLLC

/s/ *Kevin P. Whitmore*
Kevin P. Whitmore #21293
301 Washington Avenue, Suite 202
Memphis, Tennessee 38103
(901) 461-1039
kwhitmoore@comcast.net